United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BOUNA SOUMARE,

Petitioner,

v.

CHRISTOPHER CHESTNUT, *et al.*,

Respondents.

Case No. 1:26-cv-06293 (EJD)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

Before the Court is Petitioner Bouna Soumare's Petition for Writ of Habeas Corpus challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). For the reasons that follow, the Court finds that Petitioner is entitled to relief on his due process claim, entitling him to release from custody.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner is a native of Mali who entered the United States on April 15, 2024 by crossing the Otay, California border from Mexico. Dkt. No. 1 ¶ 39; Dkt. No. 6 at 7. Following his entry, he was arrested by immigration authorities, briefly detained, and then released on his own recognizance on April 16, 2024. *See* Dkt. No. 1-1 at 2. He was placed in removal proceedings that same day and permitted to apply for asylum. Dkt. No. 1 ¶¶ 4, 40; Dkt. No. 6 at 11.

Following his release, Petitioner applied for asylum and claims to have followed all the conditions of his release, including attending all ICE check-ins—a contention which Respondents do not dispute. Dkt. No. 1 ¶¶ 41–42. Petitioner was subsequently granted work authorization by USCIS. *Id.* ¶ 43. Petitioner was re-detained by ICE on June 10, 2026 when attending a scheduled

ICE check-in. *Id*. ¶ 44. He was not given notice that his parole was to be revoked prior to his arrest, nor was he informed that he had violated any of the conditions of his parole. *Id*. ¶¶ 44–45.

A day after his re-detention, Petitioner filed for habeas relief in the Eastern District of Pennsylvania, where he was initially detained. *See* Dkt. No. 6 at 15. The District Court judge granted relief in part, finding that Petitioner's detention was controlled by 8 U.S.C. § 1226(a), entitling him to a bond hearing. *See* Dkt. No. 6 at 21. The court, however, did not consider the due process argument that he was entitled *pre*-deprivation process prior to revocation of his parole. The court ordered bond hearing was held on June 22, 2026, with the Immigration Judge ("IJ") finding that Petitioner had "not met his burden establishing that he is not a flight risk." *Id*. at 23. Notably, the IJ did not deny release based on a finding of dangerousness or that Petitioner violated any of the terms of his prior parole.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner argues that he is entitled to release from custody because his re-detention without notice or a pre-deprivation hearing violated his procedural due process rights under the Fifth Amendment, as well as the Administrative Procedure Act ("APA"). Dkt. No. 1 ¶¶ 50–63.



United States District Court
Eastern District of California

United States District Court
Eastern District of California

Respondents oppose relief, arguing that Petitioner received due process through the June 2026 bond hearing and that he must exhaust his administrative remedies by appealing the bond denial to the Board of Immigration Appeals ("BIA") before seeking habeas relief. *See* Dkt. No. 6 at 2–4. The Court first addresses exhaustion before turning to the merits of Petitioner's due process claim.

**A. Exhaustion**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). As the Ninth Circuit has stated:

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

An exception applies with respect to Petitioner's due process claim. "[C]ontrary to Respondents' contention that Petitioner has merely challenged the [immigration judge's] 'erroneous factual determinations and evidentiary errors,' [citation] the basis for the Petition is a claimed deprivation of constitutional due process." *Rufino Ligario Hernandez v. Mark Wayne Mullin, et al.*, No. 5:26-CV-00585-JAK-ADS, 2026 WL 846037, at * 7–8 (C.D. Cal. Mar. 24, 2026) (excusing prudential administrative exhaustion as futile). Specifically, that Petitioner was entitled to process *before* he was arrested and detained to determine whether any changed circumstances since his prior release from immigration custody necessitated his re-detention. *See* Dkt. No. 1 ¶¶ 62–63. "Because this claim is not within the jurisdiction of the [BIA], requiring administrative exhaustion would be futile." *Rufino Ligario Hernandez*, 2026 WL 846037, at *8;

United States District Court
Eastern District of California

*Yero v. U.S Gen. Att'y*, No. 1:26-CV-04312-DAD-JDP, 2026 WL 1707102, at *3 (E.D. Cal. June 12, 2026) (excusing exhaustion requirement where due process claim alleged Petitioner was entitled to notice and pre-deprivation process prior to his re-arrest by ICE). Accordingly, Petitioner did not need to appeal his bond denial to the BIA before seeking habeas relief.

**B. Due Process**

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Liberty Interest**

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance—as was the case with Petitioner here—require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see also, Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025) ("Under federal regulation, DHS was authorized to release them under § 1226 only upon a determination that 'such release would not pose a danger to property or persons' and that they were 'likely to appear for any future proceeding.'"). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (internal quotation omitted).

Numerous courts have found that noncitizens previously released by immigration authorities on their own recognizance obtain a liberty interest in their continued freedom. *See, e.g.*,

*Jaraba Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). As Petitioner was released from ICE custody on his own recognizance in 2024, he maintains a protected liberty interest in remaining out of custody. Revocation of that liberty required a finding that circumstances had changed since the initial determination that he posed neither a danger to the community nor a flight risk.

**2. *Mathews* Factors**

As Petitioner has a protected liberty interest, the Court must next determine what process was due before the Government could terminate his liberty. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation … and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. First, Petitioner has a significant private interest in his continued release from custody. Petitioner was released by the Government and living at liberty for nearly two years prior to his re-detention. During that time, Petitioner applied for asylum, received work authorization from USCIS, and was given the freedom to begin developing ties in his community.

Second, the risk of erroneous deprivation is high when, as here, Petitioner's release was

revoked without any showing of changed circumstances at the time of his arrest by ICE. *See Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). "While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). At Petitioner's belated bond hearing in June 2026, the IJ did not make any finding that circumstances had changed since the Government's initial decision to release him in 2024. Indeed, nothing in the record supports the conclusion that Petitioner had become a flight risk—which is why the IJ denied bond—between his release in 2024 and his re-detention in 2026. He claims to have not violated any of the conditions of release and was arrested at an ICE check-in, showing compliance with immigration directives rather than risk of flight. Where the Government "fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing" demonstrating changed circumstances since the individual's prior detention and release, "the risk of erroneous deprivation is high." *Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding due process violation where Government failed to provide *pre*-deprivation process, even though Petitioner had received a belated bond hearing).

Finally, "the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Respondents have not provided the Court with any information regarding the burden, if any, that additional process may place on the Government if the Court orders pre-deprivation process. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but its interest in doing so without a hearing and making a finding of changed circumstances is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

United States District Court
Eastern District of California

As the Government failed to make any showing of changed circumstances at a pre-deprivation hearing before re-detaining Petitioner, the revocation of his prior order of release was a violation of his due process rights.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing at which the Government will bear the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community if not detained.

4. This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: October 9, 2026

EDWARD J. DAVILA
United States District Judge